*361 The opinion of the court was delivered by
Duncan, J.
This was an action, brought by M‘Clelland, against M‘Jilmont, for defamatory words laid in two counts. In the first, “ You are a thief, and I can prove it. You stole hides or leather out of your father’s vats in the night time.” In the second count the words are I aid in the third person.
The errors assigned were in receiving the evidence of William, Rankin and Isaac Griffith. They are precisely of the same character, and are said to consist in this, — that these witnesses could not state the very words of the defendant, whether it was stole. or took; and though they were sure it was either the one or the other, they could hot state which. Admitting this to be the subject of a bill of exceptions to the evidence itself, (for the sake of the argument,) and for any other purpose I protest against it, because, if there is any thing in the exception, the course should have been, after the evidence had been received, to call on the court to instruct the jury, that the defendant had not proved the words laid, and then, if the opinion had been erroneous, to except to that, I am of opinion that it was admissible, and that it was for the jury to say what the words really were, from the sense of the whole conversation. For, if that were not the case,- the slander must have gone unpunished. The defendant explained what he had said, and intended, in the subsequent part of the same conversation; a construction of it. On the charge being made, the witness, Rankin, observed, ‘‘He did not count the act stealing, as it. was from the premises of his father.” To which MlMmont directly replied, “That made no difference, though the father did not prosecute:” thus directly impeaching him of the act of stealing. “It is stealing,” said the defendant, “though on his father’s premises; and though his father has not prosecuted him.” This was not only the plain meaning, but the plain language;' and so the jury have found the fact, that the defendant did say stole, and, I think, with good reason. On a motion for a new trial, the court would not have set aside the verdict as contrary to the evidence; and the evidence of Richard Chapman confirms this, if it wanted'confirmation. For after this suit had been instituted, he said he would have no difficulty in proving that the plaintiff, M‘Clelland, had stolen his father’s property. Nothing could tend more to satisfy a jury that the word was stole, than the defendant’s boast that it would be easy for him to prove it. But this evidence was likewise excepted to. This was not a new charge, for which a new action could be' brought, but was spoken in relation to the pending suit; in defending himself from which suit, he said he would have no difficulty in proving that M‘Clelland had done that which he had charged him with, — to wit, stolen his father’s property. It was a repetition of the same charge, and was evidence of his malice; and it was proving, from his own lips, that stealing was the crime imputed to the plaintiff by him. This was all proper evi *362 dence to go to the jury, and if the court had overruled it, it would have been withdrawing the facts on trial from the jury. If the defendant had demurred to this evidence, its truth would have been admitted, and every inference which a jury might reasonably have drawn from it, must have been likewise admitted. The jury might have reasonably drawn the inference, that the word was stole. Indeed, from the whole conversation, (its whole colour,) stealing was the very thing he intended; and his subsequent boasting shows it was the word he had used. There is no error, therefore, in the first bill, which relates to these three witnesses.
The second bill of exception, was to the admission of evidence to prove the defendant’s situation in point of property. It has not been denied, that it has been the practice to receive this kind of evidence in actions of slander, though it is said, that there is no adjudication to be found in the books of reports, where there has been a direct decision on a question made.' It is enough to say, that this practice has continued for a time, beyond which the memory of man runs not to the contrary. This constant usage proves the law. We look for cases on disputed points, but undisputed principles may be, without any particular precedent to be found, or a direct judicial decision. It is handed down as the law, — the principle has been constantly applied. What is this but the common law? No man can tell me when, or name the case in which it was first decided, that the word heirs, in a deed, was necessary to create a fee simple estate. This inquiry into the condition of the defendant has constantly been made, and has always been applied to those cases where damages are designed, not only as a satisfaction for the injury, but as a terror to others, and as a proof of the detestation of juries. In cases of crim. con., actions for debauching a man’s daughter, seduction and getting with child, per quod servilium amisit, actions for malicious prosecution, slander, and other actions of the same species, where the damages are not matters of calculation by dollars and cents, but where each must depend on its own particular circumstances of aggravation, and the condition in life of the parties, courts (unless the damages are outrageous,) never set aside the verdict on account of the damages, but always take into view the situation of the parties as to property; and this they can only know from the evidence. The condition, and even the sex of the parties, are considered. The imputation of want of chastity to a man, is actionable; yet, unless under very particular circumstances, only nominal damages would be given. The pecuniary injury might be as great "to him, as the same imputation would be to a female. In the latter case, they would always bear some proportion to the estate of the slanderer, and the condition in life of the party slandered. Pecuniary loss is lost sight of, — it is not a matter ofcalculation, but of policy: the estimation of the value of character, and the detestation of crime.
The counsel has selected one of our wealthiest citizens to illus- *363 irate his position, that the damages should be equal where a blow was inflicted by him on a man of his own standing in society., and where on the man who blacks his shoes; and that there should be the same measure of damages, where a slander was uttered by the shoe-black against a fish-woman, as by the wealthiest citizen against the most respectable female. In a remarkable case of malicious prosecution, where forty thousand pounds were given in damages, evidence had been given of the great estate of the defendant, i.n possession on record, of more than fifty judgments, to the amount of more than one hundred thousand pounds, and in the actual receipt of three thousand pounds per annum. The court refused a new trial, because the defendant was well able to sustain the verdict. In all trials for crim. con., the situation and condition of the parties are always given in evidence. With us these actions are uncommon, because the crime is a rare one.
The matter cannot be reasoned on, upon the doctrine of equality of rank and condition:.the law does not so reason upon it. It would be destructive of the best interests of society so to reason upon it. The plaintiff, in this action, may give evidence of his own condition in life to aggravate the damages. This is well settled, and its reasons ably stated, in the opinion of one of the most distinguished judges, that ever graced a judicial seat in any county, Chief Justice Parsons, in Learned v. Buffinglon, 3 Mass. Rep. 548. The same reason hplds, and the same principle obtains, as to the condition and circumstances of the defendant. There is nothing in opposition to this to be found in any elementary treatise, and we are not to be guided in our judgments by the speculations of any writer, however respectable he may Be, and however correct and well arranged his books may be, as a mere compilation. The passage referred to in Starkie is itself obscure. While he admits the practice, he says, “the principle is not very obvious, and scarcely can be warranted, unless the situation and rank of the defendant have affected the question of prejudice sustained by the plaintiff.” This prejudice, in almost evei'y case, will depend on the condition in society of the slanderer. But actual pecuniary prejudice seldom is susceptible of proof in these actions, and is not the only standard of damages. Pecuniary loss is often small, where tHe distress and misery inflicted by the slanderer are great. The injury is not capable of strict pecuniary admeasurement in fact; and wherever the natural consequence of the words is a damage, as the imputation of a crime of moral turpitude, subjecting the party to an indictment, or to an infamous punishment, always is, the law supposes a damage, whereas, in other eases, the party' who brings an action for words must show the daipage he has received from some specific loss. Damages are given by way of example. That which would be exemplary', as to one, would not make another feel, — would be no terror to him.
Judgment affirmed.