Mix *against* Woodward.

Where libellous words are charged against some particular person, who is so ambiguously described, that without the aid of extrinsic facts, his identity cannot be ascertained, there, by the introduction of proper averments, the words may be rendered sufficiently certain to sustain the action.

Where the words in an action for a libel, alleged to be libellous, were, "the writer in the *Register*, who was deprived of a two-penny justice-ship for mal-practice in packing a jury;" and the plaintiff, as introductory to the words, averred, that for two years previous to the publication of the libel, he was a justice of the peace, duly qualified and acting as such; that he was not re-appointed, by the General Assembly, in *May*, 1834; and that the libel was published of and concerning the plaintiff, and of and concerning him, in relation to the fact that he had held said office, and had not been re-appointed, and of and concerning the conduct and behaviour of the plaintiff in the execution of his said office; it was held, that these averments, in connexion with the words alleged to be libellous and the accompanying *innuendoes*, were sufficient, after a verdict for the plaintiff, to sustain the finding of the jury, although there was no averment that the plaintiff, either was, or was reputed to be, the writer in the *Register*, or that he was the only justice, who was not re-appointed, at the time referred to.

An *innuendo* cannot extend the meaning of the words beyond their true import, unless something is otherwise put upon the record for it to explain; it being merely explanatory of the matter previously expressed, and of that only.

But where new matter is introduced, by an *innuendo*, which is not warranted, by the introductory matter, if it is not necessary to support the action, it may be rejected as surplusage.

The words charged as libellous in this case, being explained, by an *innuendo*, as meaning "that the plaintiff had packed a jury, and had been guilty of mal-practice in packing a jury;" it was held, that the *innuendo* was warranted by such words.

Where the person is so ambiguously described in the libel, that a resort to extrinsic facts is necessary to ascertain his identity, the libel and all attending circumstances, are to be submitted to the jury; and the plaintiff is at

liberty to prove the averment that the libel was published " of and concerning him," in the same manner, and by the same kind of evidence, as he might prove any other fact in the cause.

Where evidence was offered, by the plaintiff in such action, to prove, that he was the person intended in the libel : and it appeared from the testimony of a witness, that in a conversation between the defendant and others, soon after the publication of the libel, the charge was repeated, by the defendant, and in substantially the same terms ; that he expressed his gratification at the removal of the plaintiff from the office of justice, and said, " he is now in a situation where he will not pack another jury :" from other evidence it appeared, that on another occasion, when the attention of the defendant was particularly called to the publication of the libel, and he was directly charged with publishing it *of and concerning the plaintiff*, and satisfaction was demanded for the injury, the defendant, so far from denying the charge, impliedly admitted its truth, and set the plaintiff at defiance : and from other evidence it appeared, that after the commencement of this suit, the defendant published an article in his paper, referring to the plaintiff by name, as demanding of the defendant damages sustained by the plaintiff, from a paragraph published in the defendant's paper of the 12th of *June*, 1834, [the date of the libel]—the plaintiff's *character* having been suffering, most *grievously*, from that time till the present, without any consideration whatever,—with other remarks of a similar tendency : it was held, that all this evidence was relevant to the point in controversy, and admissible for the purpose for which it was offered.

Where the plaintiff in such action introduced a witness, who testified to certain remarks made by the defendant to a third person, during the session of the General Assembly in 1834, complaining that the representatives from *N. H.* had only turned " young *M.*" out from being a justice, which would not satisfy him, unless they turned out " old *M.* and half a dozen more of the rascals ;" it was held, that such testimony was admissible, as shewing the *quo animo* the publication was made.

It appearing from the testimony of the plaintiff, in such action, that there were other justices in *N. H.* county, who were not re-appointed in *May*, 1834, and to whom the publication might have applied, as well as to himself, the defendant claimed, that the whole was so vague that the court should have told the jury, there was no evidence to shew that the plaintiff was the person meant ; it was held, that as the court could not say that there was no evidence in the cause for the jury to weigh, it had no power to withdraw the evidence from their consideration.

To make out a justification of a libellous charge, the evidence must show, that the strict legal offence was committed, and must be such as would be necessary to convict the plaintiff, if he were on trial for that specific offence.

The charge of packing a jury imports the improper and corrupt selection of a jury, sworn and empannelled for the trial of the cause.

Where the facts averred in the defendant's notice, and offered to be proved, as a justification of such charge, did not go to show, that the plaintiff interfered at all in the selection of a jury empannelled and sworn, but only that he conducted improperly in the selection of the free-holders to be placed in the jury-box ; it was held, that the justification failed.

That a justice in *Connecticut*, in ordinary cases, has no power to pack a jury,

*New-Haven,*
July, 1837.

Mix
*v.*
Woodward.

according to the strictly legal meaning of that term, does not render the proof of a different offence available as a justification; for there are cases, even here, where a justice may pack a jury, in the former sense; and besides, when words having a well known meaning, are used without qualification, they must be taken to have been used according to that meaning.

Where the plaintiff sues in a particular character, and in the *innuendo,* he explains the words charged as applying to him in that character, he is bound to prove that they were so used.

So too, where the words are ambiguous, and admit of different applications, if the *innuendo* limit and confine them to a particular sense, the plaintiff is bound to prove, that they were used in that sense.

Where the defendant in such action claimed, that the words charged did not necessarily import, that the plaintiff had actually been guilty of mal-practice in packing a jury, but only that he had been deprived of his office on a charge of having packed a jury; and that what was the defendant's meaning, was a question of fact for the jury to decide; it was held, that the court must unavoidably put a construction on the words, in order to determine the question of justification; and that the decision of the court that the words necessarily imported a charge in the former sense, was correct.

Articles reflecting on the plaintiff, whether in themselves libellous or not, published subsequently to the libel, *but which have no reference to it,* are not admissible to show malice, or to enhance the damages.

THIS was an action for a libel upon the plaintiff, published in a newspaper, called " *The Daily Herald,*" *June* 12th, 1834. The action was commenced *October* 12th, 1835.

The declaration contained three counts; but for the present purpose, it will be sufficient to state the principal allegations in one of them. In the second count, it was alleged, That the defendant, on the 12th of *June,* 1834, at *New-Haven,* falsely and maliciously published, and caused to be published, in a newspaper called *The Daily Herald,* edited, printed, and circulated by the defendant, of and concerning the plaintiff, and of and concerning the plaintiff in reference to the fact that he had held the office of a justice of the peace in and for the county of *New-Haven,*—which office the plaintiff had in fact held, for two years prior to the 12th day of *June,* 1834, and continued to hold the same office up to the 20th day of *June,* 1834, and to which said office of justice of the peace, the plaintiff had not been re-appointed, by the General Assembly, at its annual session in *May,* 1834, but not in consequence of any mal-practice or misconduct of the plaintiff;—and of and concerning the plaintiff's conduct and behaviour in the execution of said office, a certain false, scandalous, malicious and defamatory libel, in the form of and as a communication in and for said *Daily*

*Herald,* purporting to be addressed to the editor, the defend- *New-Haven,*
July, 1837.
ant, and was as follows, *viz.* " Mr. Editor, I,"—meaning the
defendant,—" do not suppose it worth while to take much no-  Mix
*v.*
tice of the whinings of the disappointed office-seeker,"—mean-  Woodward.
ing the plaintiff,—" who writes the articles in the *Register*, on
the proceedings of the legislature ; but would,"—meaning the
defendant would,—" merely observe, that his,"—meaning the
plaintiff's,—" sympathies for Mr. *Ingersoll,* the late judge of
probate, are all thrown away. However *sorry* his friends may
be in his behalf, I have heard the gentleman declare, both be-
fore and since the election, that he had placed himself upon a
cast, and stood the hazard of the die. He was willing to go
with the party, whose cause he had espoused ; and was wil-
ling to take the consequences. He has said, since the late ap-
pointment, that he was fair game, and ought to be turned out.
I have no doubt that he despises the puppyism, that whines
about the fact. Unlike the writer,"—meaning the plaintiff,—
" in the *Register,* who,"—meaning the plaintiff,—" was de-
prived of a two-penny justiceship,"—meaning the plaintiff's
said office of justice of the peace,—" for mal-practice in packing
a jury,"—meaning the plaintiff had packed a jury, in some
cause legally pending in court, and had therefor been deprived
of his said office of justice of the peace, by the General Assem-
bly of this state, in *May,* 1824, and that the plaintiff had in
fact packed and selected a jury, in some cause legally pending
in court, to be returned to favour one side in the cause, and to
give a verdict against law, right, evidence and justice, and that
the plaintiff had been guilty of the disgrace and iniquity, in his
said office of justice of the peace, of conspiring and confedera-
ting with the jury, in some cause legally pending, in order to
obtain a verdict in favour of one side or one party, against law,
evidence and justice, and that the plaintiff, as such justice of
the peace, had iniquitously selected a jury, and caused and pro-
cured a jury to be selected and returned to court, who had
formed opinions, and would favour one side in a cause legally
pending in court, and that well known to the plaintiff, and
who would corruptly favour one side in a cause, and that well
known to the plaintiff, and who, the plaintiff well knew, were
disqualified to sit and act, as such jurors, in such cause, and
that the plaintiff therefor had been deprived of his office of jus-
tice of the peace, by said General Assembly,—" he takes the

measure which he would avowedly have meted to others, with the magnanimity of a gentleman and a man of sense. The writer,"—meaning the plaintiff,—" in the *Register* had better stick to his,"—meaning the plaintiff's—" strictures on the governor's message, which may be read by future generations, but not before. A WHIG."

The defendant pleaded the general issue, with notice to the following effect : That under such general issue, the defendant would, if made necessary, by the proof introduced by the plaintiff, offer testimony to prove, that previous to the publication of the alleged libel, there had been pending before the county court for *New-Haven* county, a suit, brought by the state of *Connecticut*, against *L. K. Dow* and *H. E. Peck*, as the editors and proprietors of a newspaper, printed and published by them in *New-Haven*, instituted to recover the sum of 43 dollars, 49 cents, which, it was claimed in behalf of the state, had been fraudulently obtained, by them, from the state, as payment to them for the printing of the laws of the state, but which action, it was claimed by them, was unfounded and groundless, and that the payment of said sum was justly made, as it was honestly and justly due to them, and that said suit was intended to render them and their paper obnoxious and unpopular in the community, and thereby, in its consequences, produce political effect, and answer party purposes. Then the defendant will prove, that the plaintiff was an attorney in behalf of the state, in said suit, and advised to the commencement of it ; and that it was tried at the term of said court in *November*, 1833, to the jury, and argued by the plaintiff. And the defendant will prove, that the jury empannelled to try said cause, were unable to agree, and did not agree on a verdict ; and thereupon the papers were received back, by order of the court, and the cause was continued to the next term, to be held on the third *Tuesday* of *March*, 1834. And the defendant will further prove, that in the interval between the adjournment of said court in *November*, 1833, and the session of said court in *March*, 1834, *viz.* on the first *Monday* of *January*, a meeting of the civil authority, select-men, constables and grand-jurors of the town of *New-Haven*, had been duly warned to be held, and was held accordingly, to choose, appoint and select to serve as jurors for the then ensuing year, in the superior and county courts, in *New-Haven* county, such number of their

able and judicious free-holders as were prescribed by law for said town, and so that the several names of the jurors so chosen and selected, should be placed in a box, pursuant to the statute, and to be drawn out thereof, as is by law provided.   And the defendant will prove, that the plaintiff, well knowing the premises, and being an attorney and counsellor at law, and justice of the peace in and for said county, and being one of the civil authority of said town of *New-Haven*, and by law constituting one of the board for choosing jurors for said town, did, on the day of the meeting of said board, *viz.* on the said first *Monday* of *January*, 1834, select, write down and make out a list of the names of certain free-holders of said town, to the number of thirty-eight, and did procure their names to be put into the box by law provided to contain the names of such jurors as should be chosen for said town; and did then and there, at said meeting, after it had been organized for the purpose aforesaid, offer, and propose, and procure the names of said persons so selected by him, to be nominated and chosen as jurors aforesaid, and to be put into said box, so that they might be drawn therefrom and empannelled on the trial of the above-mentioned cause of the state against *Dow* and *Peck*, at a then future term of said county court, to which the same had been continued, designing thereby that said jurors, in the event that they should be drawn from said box and empannelled on the trial of said cause, should give a verdict for the plaintiff against the defendants, and to answer his own views and wishes in reference thereto, regardless of justice and equity.   And the plaintiff did then and there select said jurors, in the manner aforesaid, with a view, and for the purpose, that they might be drawn from said box, and empannelled before the superior and county courts for *New-Haven* county, on the trial of some other causes, pending and to be tried before those courts.   And as to so much of said alleged libel, which the plaintiff shall prove, (if any) to refer to the fact that the plaintiff was not re-appointed a justice of the peace, by the General Assembly of 1834, the defendant will prove, that at a county meeting of the members of said Assembly from *New-Haven* county, it was, in point of fact, objected against the plaintiff, that he had been guilty of packing a jury, at the time before-mentioned, and of mal-practice in office, as a justice of the peace, in relation to the choosing of jurors as aforesaid; and thereupon his nomination as a

*New-Haven,*
July, 1837.

Mix
*v.*
Woodward.

*New-Haven,*
*July, 1837.*

Mix
*v.*
Woodward.

justice of the peace, was, in point of fact, rejected.    And if the plaintiff shall prove, that the correspondent of the defendant, in the communicated article recited in the plaintiff's declaration, had any reference to the plaintiff, then the defendant will prove, that the expression therein of his being turned out of a two-penny justiceship for mal-practice in packing a jury, had reference to the statement made regarding the plaintiff as aforesaid, to said county meeting, and to the fact that his nomination as a justice of the peace, was thereupon rejected.

The cause was tried at *New-Haven, October* term, 1836, before *Bissell,* J.

On the trial, the plaintiff, in support of his declaration, exhibited in evidence *The Daily Herald,* a paper edited, printed and published by the defendant, of the date of the 12th of *June,* 1834 ; in which paper there appeared, as a communication, an article, signed "A WHIG," being the same article which is referred to and complained of, by the plaintiff.   For the purpose of shewing that he was the person meant and referred to, in that article, as having been "deprived of a two-penny justiceship, for mal-practice in packing a jury," he exhibited in evidence the commissions of the justices of the peace for the county of *New-Haven,* appointed by the legislature in the years 1833 and 1834, by which it appeared, that the plaintiff and *William H. Ellis,* of *New-Haven,* and *Ira L. Ufford,* of *Derby,* were justices in 1833, and were not re-appointed justices, by the legislature, at their session in 1834; and it was admitted, that the plaintiff and said *Ufford* were, during those years, practising attorneys and counsellors at law, the former residing in *New-Haven,* and the latter in *Derby ;* and that they were both duly qualified and exercised the office of justice of the peace under the appointment in 1833.   To prove the same point, the plaintiff also offered in evidence an article published in *The Daily Herald,* of the date of *October* 7th, 1835, of which the following is a copy:

[B]

" We received the following note, through the post-office, at precisely 10 minutes before 2 P. M. this day :

" *New-Haven, Oct.* 6, 1835.

" *Sir,*—I shall expect at your hands, ample satisfaction for the libel upon me published in your paper this afternoon ; and also, for one published in your paper of *June* 12, 1834.   The

statements, totally false and unfounded, which you have pub- <span>*New-Haven,*</span> lished against me, and in which I believe you most wilfully <span>July, 1837.</span> persevere, leave me no middle ground.

Mix<br>*v.*<br>Woodward.

Yours, &c.  SILAS MIX.

" To *Thos. G. Woodward*, Esq. Editor, *Herald, &c.*"

> "Now, Mr. *Silas Mix,*
> Since you are in such a fix,
> We will see you in the *Styx,*
> Before the *Herald* contradicts
> Any '*libel upon* ME.'

" If the 'everlasting great man' intends to be personally pug-nacious, for our protection we shall call on the gentleman who throttled him in open court for his insolence,—an assault which his dastard spirit could not resent.  Now, sir, 'gae your gaits.'"

For the same purpose, the plaintiff also offered in evidence an article published in *The Daily Herald,* of the date of *October* 19th, 1835, of which the following is a copy :

[C]

" '*Ample satisfaction.*'—We were, on *Saturday* evening last, favoured with a communication, comprising several sheets of foolscap, highly ornamented with a series of pink ribbons, beautiful as one of the frail sisterhood, ' with a narrow tape cap-string tied under her chin ;' and we verily believe there is quite as much virtue in the one as in the other.   It was polite-ly handed us, by a sheriff's deputy, indorsed with his return of property secured to pay the damages, sustained by one *Silas Mix,* from a paragraph published in this paper, on the 12th *June,* 1834 ! and whose *character* has been suffering most *grievously* from that time to the present, without any consider-ation whatever.   These foolscap sheets are daubed over with certain hieroglyphics, from which we learn, among other im-portant facts, that the aforesaid *Silas Mix* is ' excepted by and amongst all his neighbours and other good citizens of this state, to whom he is in any wise known, to be a person of good name, fame and credit'—a fact which we never doubted, and for which he wants us to pay him six thousand dollars, in good sound *Jackson* yellow-boys, and for want thereof, to take the body.   We learn further, that we have accused him of pack-ing a jury, much to his injury, as a counsellor at law and a justice of the peace.   Now, that is certainly a mistake."

*New-Haven,*
*July, 1837.*
_____

Mix
*v.*
Woodward.

For the same purpose, the plaintiff also offered in evidence another article in *The Daily Herald,* of the date of *October* 28th, 1835, of which the following is a copy:

[E]

" *Another plaster.* We were this morning favoured with another communication, by the hands of a sheriff's deputy, for the 'ample satisfaction' of *Silas Mix.* In the hurry of bonds, deeds, insurances and other securities to save the reputation of that *monstrous* patriot and lover of the people, it may well be supposed, that we are too much *agitated* to attend to our other concerns. *October* 28th, 1835."

The articles so offered in evidence were objected to, by the defendant, on the ground that it was not competent to the plaintiff, for the purpose of proving that he was the person so referred to, to give in evidence any facts, or any publications of the defendant, other than such as were specially set forth in the plaintiff's declaration ; and also on the ground, that such evidence was irrelevant, and did not conduce to prove the fact for which it was offered. But the court overruled the objections, and admitted the evidence.

The plaintiff also, for the purpose of proving that he was the person referred to, offered, as a witness, *Hoadley B. Ives*, who testified, that a short time after the publication of the alleged libel, *viz.* on the 1st of *June,* 1834, he heard the defendant, in a conversation with some person, (whom he did not recollect,) say, in reply to a remark made by that person relative to the plaintiff's not having been reappointed justice of the peace, " he is now where he will not pack another jury." To this testimony the defendant also objected, for the reasons before mentioned, and also on the ground that no parol evidence was admissible for that purpose. But the court over-ruled the objections, and admitted the evidence, for the purpose for which it was offered.

It was claimed by the plaintiff, on the trial, that he was not the writer of the article in the *Register,* commented upon in the article, contained in the alleged libel ; and that the attack upon him in the alleged libel was without excuse or provocation ; and no evidence was given, that the plaintiff was, or was reputed to be, the writer of the article ; and thereupon the defendant contended, that the alleged libel could not apply to the plaintiff.

New-Haven,
July, 1837.

Mix
v.
Woodward.

For the purpose of shewing that the defendant knew, that the plaintiff was not removed from the office of justice of the peace for having "packed a jury," but on political grounds only, the plaintiff offered in evidence the deposition of *John C. Palmer*, who testified as follows : "In the month of *May*, 1834, I was in *New-Haven*, during the session of the legislature ; and one evening, I was sitting by the hall door of the *Tontine*, and *Thomas G. Woodward* of *New-Haven* walked through the hall, and came to the hall door by the front steps.    Mr. *Woodward* said to the person standing by him, that he had done with *Townsend* and *Galpin :* he would never support them for the legislature again.    They were very weak ; had not got force ; they did not go straight; after contending with them for a long time, we had prevailed upon them to turn young *Mix* out from being justice of the peace.    It was hard work to get them to do *that*.    We cared nothing about their turning him out alone ; and should not be reconciled, unless they turned out old *Mix* and half a dozen more of the rascals.    This was what we had been contending for ; and nothing but the assurance that these men should be removed, had brought the young men out so strong at the polls.    If any thing was said to *Galpin* and *Townsend* about it, they would reply, it was too small business, and turn it off in that way. The deponent added, that in the course of the same evening, he heard that *Silas Mix* had been left off the list of justices of the peace for *New-Haven* county, by the county meeting ; and that *Silas Mix* was the person spoken of by Mr. *Woodward*, when he made use of the words '*young Mix*.'

The defendant objected to this deposition, as irrelevant and inadmissible ; but the court over-ruled the objection, and admitted the evidence.

This being all the evidence offered, to prove, that the plaintiff was the person referred to in the alleged libel, the defendant objected, that it was wholly insufficient, and did not conduce to prove, that the alleged libel was written and published of and concerning the plaintiff individually, or in either of the capacities alleged in his declaration, and prayed the court so to decide.    The court did not so decide, but permitted such evidence to go to the jury.

The plaintiff, to shew malice in the defendant in the publication of the alleged libel, offered in evidence two articles, pub-

lished in *The Daily Herald*, under date of *December* 6th, 1835, and *January* 9th, 1836, of which the following are copies :

[F]

" *Silas*, they say, is a great friend to antiquity, and astonishingly gallant to the sex. There are strange affinities in these days. *Joice* and he might reconcile the discrepancies of age, by their natural sympathies. *Dec.* 16th, 1835."

[G]

" We recommend *Silas* to go to some new settlement among congenial spirits of the woods. Where he is *not known*, he may do some good, and not much harm. *January* 9th, 1836."

To the admission of these articles the defendant objected, on the ground that they had no relation to or connexion with the alleged libel, and on the ground that they were not set forth in the plaintiff's declaration, but were published long after the alleged libel, and after the commencement of the present action ; and were in themselves actionable. But the court overruled the objections, and admitted the evidence for the purpose for which it was offered.

The defendant, for the purpose of justifying the publication of the alleged libel, in case it should be found to apply to the plaintiff, offered evidence tending to prove the several facts specified in his notice. To this evidence, the plaintiff objected, on the ground that the facts, if fully proved, would not constitute a justification of the alleged libel. The court sustained the objection, and refused to admit the evidence.

The defendant then offered the same evidence of the facts contained in his notice, as well for the purpose of repelling the presumption of malice, as for the purpose of mitigating damages. To the admission of the evidence, for either of these purposes, the plaintiff objected ; and the court sustained the objection and rejected the evidence.

The plaintiff thereupon voluntarily offered to the defendant full liberty to prove the truth of the allegations set forth in the notice in mitigation of damages, and to have the same effect in mitigation, as if the evidence had been admitted by the court ; which offer was accepted by the defendant ; and the evidence was received for that purpose. And the defendant claimed, that he had fully proved, by the testimony of *John*

*Scarritt, Philip S. Galpin* and others, all the facts set forth in his notice; and that before the publication in question, the plaintiff was generally reputed to have been guilty of the misconduct claimed to be proved by the defendant.

*New-Haven,*
July, 1837.

Mix
*v.*
Woodward.

And the defendant claimed, upon the foregoing evidence,

1st, That it did not appear that the supposed libel was published of and concerning the plaintiff individually, or in either capacity, as alleged in his declaration.

2d, That if it was published of and concerning the plaintiff, as alleged, it did not necessarily import a charge by the defendant, that the plaintiff had been guilty of mal-practice in packing a jury, but only that he had been deprived of his office of justice of the peace, on a charge of having so done; and that what was the defendant's meaning, was a question of fact for the jury to decide. And that if the jury should find, that said words were used in the latter sense only, their verdict must be for the defendant. But the court decided, that the supposed libel did necessarily import, if published of the plaintiff, a charge that he had been actually guilty of mal-practice in packing a jury, and refused to submit that question to the jury.

3d, The defendant further claimed, that the supposed libel, if published of the plaintiff, as alleged, must be deemed to have referred, or at least, that the jury were at liberty to find, upon all the evidence, and upon the words charged, that they referred to the conduct of the plaintiff, at the meeting of the civil authority, grand-jurors and constables, on the first *Monday* of *January*, for the selection of jurors, as set forth in the notice; and if so, that then the defendant was entitled to their verdict.

The defendant also claimed, that if the supposed libel did not refer to the conduct of the plaintiff at such meeting, then, that the words imported no charge of misconduct, which could have been committed by the plaintiff, in this State, and were not therefore libellous. But the court decided, that said words, if published of the plaintiff, did necessarily import, that he had been guilty of misconduct in packing a jury, empannelled and sworn for the trial of some cause pending in a court; and not that he had been guilty of misconduct in selecting jurors for the box, as a member of the civil authority of the town; and that said article was, on the face of it, libellous; and so charged the jury.

4th, And the defendant further claimed, that the supposed

libel, if published of the plaintiff, did not warrant the *innuendoes* in the several counts in the plaintiff's declaration contained, or either of them, purporting to give the meaning thereof; and that said *innuendoes* were not, nor was either of them, proved to be true, by the evidence exhibited in the cause; and prayed the court to instruct the jury, that it was their duty to pass upon the truth of the *innuendoes ;* and that, unless they should find that the defendant intended, by the said supposed libel, to impute to the plaintiff the misconduct, in the several *innuendoes* in the plaintiff's declaration set forth, or if not in each, at least the misconduct set forth in some of the *innuendoes,* as the meaning of the words " who was deprived of a two-penny justiceship, for mal-practice in packing a jury,"— then their verdict must be for the defendant. But the court refused to submit to the jury any question in regard to the truth of the *innuendoes,* on the ground that the objection, if any, appeared on the face of the declaration; but charged the jury, that if they found that the plaintiff was the person referred to in the supposed libel, and it was published falsely and maliciously, their verdict must be for the plaintiff.

The jury returned a verdict for the plaintiff to recover of the defendant 591 dollars, damages, and his costs. The court being of opinion that the damages were too high, returned the jury to a further consideration, and, at the same time, stated to them, that the court, on further reflection, was satisfied, that the evidence offered under the notice, and which had been received by consent of the plaintiff, ought not to have been rejected, but was legally admissible in mitigation of damages; and requested the jury to review their verdict as to the damages only. The jury, after coming twice into court, without being agreed, ultimately adhered to their verdict. The defendant moved in arrest of judgment for the insufficiency of the declaration, and for a new trial, on account of the several interlocutory decisions made by the court, because he had suffered prejudice by the ruling out of the evidence which was afterwards held by the court to be admissible, and because the evidence was manifestly against the evidence in the cause.

*Baldwin* and *Kimberly,* in support of the motions, contended, 1. That the court erred in admitting the evidence offered by the plaintiff, to shew that he was the person alluded to in the article claimed to be libellous. In that article, the person

alluded to is no otherwise designated than by the words "the *New-Haven,* writer in the *Register,*—who was deprived of a two-penny *July, 1837.* justiceship," &c. As to the first clause : there was no proof or Mix pretence that the plaintiff was either the writer, or reputed *v.* writer, of the article in the *Register ;* and no averment or Woodward. proof what *Register* was intended, or where it was published. Consequently, there was nothing in that reference to designate the plaintiff, any more than if the article had been, " The person who was deprived," &c. As to the last clause : there is no averment or proof that the plaintiff had been *deprived* of the office of justice at all. Nor is there any averment or proof, that the plaintiff was the *only* justice not re-appointed, by the legislature of 1834. On the contrary, the evidence introduced by the plaintiff to connect the libel with himself, proved, that it was equally applicable to *Ellis* and *Ufford ;* both of whom were justices not re-appointed ; and *Ufford* was also an attorney. This evidence was objected to, as irrelevant, and not conducing to connect the libel with the plaintiff. It left it just as uncertain as it would have been, if the publication had been thus : "One of the justices who was not re-appointed by the legislature, was left out for malpractice," &c. There was nothing in the evidence to shew, that the libel had any more reference to one than to another standing in the same condition, at the time of its publication. If one says, that one of the servants of *J. S.* (he having many,) is a felon ; here, for the uncertainty of the person, no action lies. *James* v. *Rutlech,* 4 *Co.* 17. *b.* Sir *Edward Bray* v. *Andrews, Moor* 63. So if the defendant had published "there is one pettifogger in *Connecticut,*" no individual could maintain an action for such publication. See 1 *Rol. Abr.* 81. *Wiseman* v. *Wiseman, Cro. Jac.* 107.

2. That the articles published after action brought, *viz.* of *December* 16th, 1835, and *January* 9th, 1836, marked F and G,—ought not to have been permitted to go to the jury as evidence of malice in the publication complained of. In the first place, they had no reference to, or connexion with the alleged libel. Secondly, they were published long afterwards, and after suit commenced. Thirdly, they are actionable in themselves; and if admitted here, the plaintiff may recover damages for them *twice.* *Thomas* v. *Croswell,* 7 *Johns. Rep.* 264. *Bodwell* v. *Swann* & ux. 3 *Pick.* 376. *Stuart* v.

New-Haven,
July, 1837.
_____
Mix
v.
Woodward.

*Lovell*, 2 *Stark. Ca.* 93.    *Finnerty* v. *Tipper*, 2 *Campb.* 72. *Chubb* v. *Westley*, 6 *Car. & Payne*, 436. (25 *Serg. & Lowb.* 474.)

3. That the court erred in excluding the evidence of the fact stated in the notice as a justification of the alleged libel, if applicable to the plaintiff, as a justice of the peace.    In the first place, in *Connecticut*, a justice of the peace has no power to pack a jury, in any other way, than by selecting men with reference to a particular cause, at the meeting of the civil authority, &c.    On that occasion, he may take the initiatory steps for packing a jury.    Secondly, a charge made against a justice of mal-practice in office, or that he was removed on that ground, must be understood in reference to our own laws. Thirdly, the jury, from all the facts in proof before them, have a right to say in what sense the words were used.    In this case, they had a right to examine the libel, in connexion with the proof from *Galpin* and others, that before the publication, the plaintiff was generally reputed to have been guilty of the misconduct at the meeting of the civil authority in regard to jurors, imputed in the notice.    *Van Rensselaer* v. *Dole*, 1 *Johns. Ca.* 279.    *Rex* v. *Horne, Cowp.* 677. 680.    The truth of the *innuendoes*, when the meaning of the words used is dubious, and the defendant denies that they were used in the sense in which they are declared on by the plaintiff, is a proper question for the jury ; and the *defendant* may always give in evidence extrinsic facts to shew their meaning.    *Rex* v. *Horne, Cowp.* 677. 680.    It would operate very unjustly to permit the plaintiff to prove extrinsic facts to give to the words a different meaning from that apparent on the face of them, if the defendant was not at liberty to do the same.    The truth of the *innuendoes* is a proper question, under such circumstances, for the jury.    *Roberts* v. *Camden*, 9 *East* 93. 96.    *Penfold* v. *Westcote*, 2 *New Rep.* 335.    *Rex* v. *Horne, Cowp.* 675.    If the jury were at liberty to find from the evidence, that the defendant referred to the conduct of the plaintiff, at the meeting of the civil authority ;    then it would follow, either, first, that the defendant was at liberty to justify the charge in the sense in which it was made, by proving the facts set up in the notice ;    or secondly, that the plaintiff having, by means of his false *innuendoes*, declared on a charge which was never intended to be made, had bound himself to the proof of those

*New-Haven,*
July, 1837.

Mix
*v.*
Woodward.

*innuendoes ;* and therefore, that the defendant was entitled to a verdict. *Pelton* v. *Ward,* 3 *Caines* 73. *Smith* v. *Carey,* 3 *Campb.* 461. *Stow* v. *Converse,* 4 *Conn. Rep.* 35. *Oldham* v. *Peake,* 2 *W. Bla.* 959. 961, 2. *Yrisarri* v. *Clement,* 3 *Bing.* 432. (13 *Serg. & Lowb.* 36. 41.) *Stockley* v. *Clement,* 4 *Bing.* 162. (13 *Serg. & Lowb.* 390.) *Sellers* v. *Till,* 4 *Barn & Cres.* 655. (10 *Serg. & Lowb.* 434.) If the defendant can only justify the charge in the sense which the plaintiff chooses to ascribe to it, in his *innuendoes,* then it would follow, that if the jury do not find the *innuendoes* true, the defendant is entitled to a verdict. The absurdity of the charge in *Connecticut,* where neither lawyer nor sheriff can pack a jury, gave the defendant a right to submit this question to the jury.

4. That the words, " who has been deprived of a two-penny justice-ship for mal-practice in packing a jury," do not necessarily import a charge, that the person alluded to had been guilty of the mal-practice; but may have intended only, that he was *removed on that charge ;* and the court erred in taking that question from the jury. If the jury had found from the evidence, that such was the meaning of the writer, then they must have found it justified by the proof introduced by the defendant. And on the question whether that was his meaning or not, the fact which the defendant claimed to have proved, that he was left out on that ground, was one which the jury should have been instructed to weigh. *Roberts* v. *Camden,* 9 *East,* 95., 6. The meaning of the defendant, upon the facts claimed to be proved, by *Galpin* and others, was peculiarly within the province of the jury to determine, as also was the truth of the *innuendoes* generally. *Oldham* v. *Peake,* 2 *W. Bla.* 961., 2., and other authorities before cited.

5. That the court erred in not admitting, in the first instance, the evidence of the facts contained in the notice to repel the presumption of malice. The defendant was editor of a paper; the plaintiff, an office-holder. The legislature was attacked, in another paper, on the ground that it had made political removals. The motives of the defendant were proper to be weighed by the jury ; and the facts offered to be proved were proper for the jury to consider for that purpose. Whether the article was so drawn as to be a libel or not—what the defendant intended to refer to—was important and proper to be consid-

ered by the jury, in considering his motives, with a view to damages. The jury were told, that the evidence was not admissible ;—that the law did not enable them to regard it for any purpose. Coming in by subsequent consent, in an action of this sort, it loses half its force.

*Ingersoll* and *Fitzgerald,* contra, contended, 1. That the application of the libel to the plaintiff must be collected, by the jury, from the particular circumstances of the case. A libel in the disjunctive A *or* B, may be applied, by the jury, to either. *Stark. Sland.* 96. 288., 9. *Holt on Libel,* 241., 243. The subsequent publications were proper to shew *who* was meant by the defendant; and that too, without their being counted on in the declaration. *Chubb* v. *Westley,* 6 *Carr. & Payne,* 436. (25 *Serg. & Lowb.* 475.)

2. That the *innuendoes,* if not warranted by the meaning of the words, may be rejected as surplusage. 1 *Chitt. Plead.* 382., 3. *Stark. Sland.,* 298., 9. *Roberts* v. *Camden,* 9 *East,* 95. *Thomas* v. *Croswell,* 7 *Johns. Rep.* 271. *Stow* v. *Converse,* 4 *Conn. Rep.* 35. 25 *Serg. & Lowb.* 500. *in notis.*

3. That to shew malice, *Palmer's* deposition was properly admitted. *Stow* v. *Converse,* 3 *Conn. Rep.* 342. The subsequent publications were also proper. *Stark. Sland.* 397. & seq. *Lee* v. *Huson, Peake's Ca.* 166., 7. *Wallis* v. *Mease,* 3 *Binn.* 546. *Chubb* v. *Westley,* 6 *Carr. & Payne,* 436. When extrinsic assertions are given in evidence, *to shew malice,* the defendant may prove their truth. *Stark. Sland.* 411. The dates of the different publications shew them to be links of one connected chain.

4. That the judge at the trial was obliged, from the state of the pleadings, to decide the meaning of the words. The notice was the same as a plea in justification; the plaintiff's objection to it, as a demurrer. How could the judge decide upon its sufficiency, without determining the meaning ? The words bear an obvious and precise meaning on the face of them, leaving nothing for a jury to settle as to their meaning. *Stark. Sland.* 44.

5. That the notice does not *justify* the charge made upon the plaintiff, *viz.* mal-practice in packing a jury. A jury must be sworn and empannelled. *Jac. Law Dict. verb.* Jury.

New-Haven,
July, 1837.

Mix
*v.*
Woodward.

3 *Bla. Com.* 365. The libel is, that the plaintiff *did the thing*—packed a jury—nothing short of it. The justification must come up to this charge, as made, or it fails. The defendant cannot *defame* in one sense, and *defend* in another. *Stark. Sland.* 197. 342. *Shepherd* v. *Merrill*, 13 *Johns. Rep.* 475. *Mitchell* v. *Borden*, 8 *Wend.* 570. *Root* v. *King*, 7 *Cowen*, 618. *Stow* v. *Converse*, 4 *Conn. Rep.* 17. The notice in justification does not allege, that the persons voted for, by the plaintiff, as one of the civil authority, had any bias; or that they had ever heard of the cause; or that he believed, or had any reason to believe, they were biassed. The only imputation which the notice casts upon him, in this respect, is, that in voting for proper persons, as was his duty to vote, he had an improper motive. This falls far short of packing a jury. It cannot be successfully claimed, that owing to our mode of drawing jurors, a jury can never be packed in this state; and that, therefore, the publication is not libellous. In *Connecticut*, there are several ways in which a jury may be packed. First, a jury of inquest, summoned by a justice of the peace, may be packed, by the justice. Secondly, in the cases of forcible entry and detainer, by the judge and justice. Thirdly, the jury summoned by a justice to try a case of summary process to recover leased lands. Fourthly, by collusion with the sheriff in selecting tales-men. In all these cases, the jurors are not drawn. Fifthly, by collusion with the clerk, in drawing off supernumeraries. Sixthly, by collusion with the constables, in drawing and returning.

6. That the evidence described in the notice could not be admitted *in mitigation.* In *Hyde* v. *Bailey*, 3 *Conn. Rep.* 466., our supreme court say the evidence must be "such facts and circumstances as show a ground of suspicion not amounting to actual proof of the guilt of the plaintiff." It must shew a ground of suspicion that the plaintiff has done the thing—been guilty of *the offence charged*—not a suspicion of something else. *Root* v. *King*, 7 *Cowen* 619. The doctrine of *Knobell* v. *Fuller*, reported in the appendix to *Peake's Evidence*, on which alone the case of *Hyde* v. *Bailey* rests, is not now the doctrine in *England.* *Waithman* v. *Weaver* & al. *Dowl. & Ryl. N. P. Ca.* 10. (16 *Serg. & Lowb.* 412.)

7. That the evidence was not admissible *to repel the presumption of malice.* That presumption may be repelled, in

cases of masters giving characters of servants; in the publication of legal proceedings; in the exercise of church discipline; in applications for redress of grievances, or for the removal of an officer; in fair criticism on literary works, and the like; but in no case like this. *Roscoe's Ev.* 295. & seq. 7 *Cowen* 613. *Fairman* v. *Ives,* 5 *Barn. & Ald.* 642. (7 *Serg. & Lowb.* 220. 223.) *Bromage* & al. v. *Prosser,* 7 *Barn. & Cres.* 247. (10 *Serg. & Lowb.* 324.) That the defendant is the editor of a news-paper, does not bring his case within the exceptions. 7 *Cowen* 628. The doctrine in *Larned* v. *Buffington,* 3 *Mass. Rep.* 546., as to the plaintiff's faulty conduct mitigating damages, has been over-ruled or qualified, by subsequent decisions of the same court. See the authorities examined in *Root* v. *King,* 7 *Cowen* 629., 630.

8. That however the rule may be, the defendant had the full benefit of this evidence, for all purposes of mitigation, on the trial. It was let in, by consent of the plaintiff. And the jury were informed, by the judge, before they brought in their final verdict, that the law was as claimed by the defendant. All, therefore, that could be proved under the notice, was in, and sanctioned by the court, before the final verdict was rendered.

Bissell, J. Upon the motion in arrest of judgment filed in this case, and on the motion for a new trial, two general questions are presented for our decision. 1. Is the declaration sufficient? And 2., if a good cause of action is there disclosed, has it been sustained, by evidence properly admitted?

The last enquiry, it will be seen, involves a consideration of several interlocutory decisions, made by the judge on the circuit.

The first and principal objection to the declaration, is, that it does not sufficiently appear, either from the supposed libel itself, or from that in connexion with the extrinsic facts brought upon the record, that the plaintiff was the person designated in the publication.

As this objection comes after verdict, the enquiry now is, whether the plaintiff has stated such a case in his declaration, as that the conclusion that he was the person meant, *could properly* be drawn by the jury: and whether this question be considered, either on the ground of principle or authority, it is

by no means free from difficulty. We have not come to a result, without much hesitation. Were the earlier cases alone to be consulted, and to govern, we probably should have come to a different conclusion upon this point. But it is undoubtedly true, that much of the ancient strictness, and many of the technical niceties, by which actions of this description were formerly embarrassed, have been discarded : and we think, that upon the authority of the more modern decisions, this declaration may be held good after verdict.

New-Haven, July, 1837.

Mix
v.
Woodward.

Is the supposed libel before us, so vague and uncertain, that it cannot be intended to apply to any person ? If such be its character, it is very clear, that it cannot be made actionable by any averment. But this position has not been taken, by the defendant's counsel. Such is not the character of this libel. It was doubtless intended to apply to some one.

It is readily admitted, that in the libel itself, the plaintiff is not so identified, as to dispense with the necessity of bringing upon the record extrinsic facts, connecting him with the publication. And the question is, whether such facts are stated, and whether the plaintiff is so far identified as to warrant the judge in submitting any thing to the consideration of the jury. On this subject we recognise and adopt the rule laid down, by *Van Ness*, J. in giving the opinion of the court in the case of *Van Vechten* v. *Hopkins*, 5 *Johns. Rep.* 211. 223. "Where the words in themselves amount to a libellous charge upon some particular person, but where that person is so ambiguously described, as without the aid of extrinsic facts, his identity cannot be ascertained, but where, by the introduction of proper averments, and a *colloquium*, the words may, notwithstanding, be rendered sufficiently certain to maintain an action ;" in such case, " the certainty is arrived at, by taking into consideration both the extrinsic facts stated in the averments and *colloquium*, and the whole of the libel ; all of which must be submitted to the jury, under the direction and charge of the judge, as in oth-cases."

Now, let us examine, briefly, the averments in the declaration, in connexion with the libel, and see whether, upon the whole, there rests such an utter uncertainty, in regard to the identity of the plaintiff, as that he can maintain no action.

It is said, the only designation in the libel is, to "the writer in the *Register*, who was deprived of a two-penny justice-

ship," &c.; and that there is no averment that the plaintiff, either was, or was reputed to be, the writer in the *Register.* It has not been contended, that it is necessary for a plaintiff to satisfy every description given in the libel ; and such a rule cannot be gravely urged ; for it would obviously enable a man to libel with impunity, by adding to a description, which every body would understand, one that did not appertain to the person slandered. The authorities upon this point will be hereafter adduced. But the libel points not only to the writer in the *Register,* but to the man "*who was deprived of a justiceship.*" And in regard to this, the averments in the declaration are, that for two years previous to the publication of the the libel, the plaintiff was a justice of the peace, in and for the county of *New-Haven,* duly qualified and acting as such ; that he was not re-appointed, by the General Assembly, at their session in *May,* 1834, a justice for said county ; and that the libel was published of and concerning the plaintiff, and of and concerning him in relation to the fact that he had held said office, and had not been re-appointed ; and of and concerning the conduct and behaviour of the plaintiff in the execution of his said office. Now, the question is, whether there be sufficient in these averments, in connection with the libel and the *innuendoes,* to sustain the finding of the jury.

It is said, there is no allegation that the plaintiff was the *only* justice, who was not re-appointed: that there might have been, and probably were, others, to whom the description would have applied, as well as to him. We do not think it necessary for the pleader, in stating extrinsic facts, going to shew that the plaintiff was the person pointed to in the libel, to exclude all others ; or to show, negatively, that no other person could have been meant ; although it is not denied, that the argument derives some support from the more ancient authorities. Thus, in the case of *Harvey* v. *Chamberlain, Cro. Jac.* 635., where the words were, " *Thy son hath murdered my child,*" it was held, that a *colloquium* must be shown, averring, that the plaintiff was the *only* son of his father. The same doctrine was laid down in the case of *Brown* v. *Low, Cro. Jac.* 443. But in *Wiseman* v. *Wiseman, Cro. Jac.* 107. it was decided, that an action lies for saying " *My brother is perjured,*" averring, that the plaintiff was his brother, *and that the words*

*New-Haven*,
July, 1837.

Mix
*v.*
Woodward.

*were spoken of him ;* although it was not shown, that he was
the only brother of the defendant.

*Starkie,* after bringing together the early cases upon this
subject, remarks : " At this day, after so many of the technical
niceties, with which actions of this description were formerly
encumbered, have been defeated ; it may well be doubted,
whether much attention would be paid to these cases.  The
real end and object of such averments, is, to show with certain-
ty, that the plaintiff is the person aimed at, by the defendant ;
and though upon the face of the words themselves, their appli-
cation may be ambiguous, as where the defendant says, '*thy
son, thy brother ;*' yet there appears no want of certainty on
the record, when it is alleged, *that the words were spoken of
the plaintiff ;* and whether they were so applied or not, is a
matter of evidence, to be proved, by showing that he did stand
in the relation specified, and without due proof of which, the
jury could not possibly find the truth of the averment, that the
words were spoken concerning him."    *Stark. Sland.* 287.

It may here be remarked, that the cases relied on, and which
have been cited from *Cro. Jac.* were overruled in the case of
*Gidney* v. *Blake,* 11 *Johns. Rep.* 54.

The rule in regard to the necessity of prefatory averments,
their office and effect, is laid down, with great clearness, by
Lord *Ellenborough,* in the case of *Hawkes* v. *Hawkey,* 8
*East,* 427. ; by *Van Ness,* J. in the case of *Van Vechten* v.
*Hopkins,* already cited, (and which we think decisive of the
present ;) and by Lord Ch. J. *De Grey,* in *Rex* v. *Horne,*
*Cowp.* 672. ; and the case of *Rex* v. *Matthews,* there cited,
(*p.* 686.) is strictly applicable to, if not decisive of, the point
now before us.  The words of the libel were these : " From
the solemnity of the chevalier's birth, and if hereditary right
be any recommendation, he has that to plead in his favour."
It was there asked, what chevalier ?  Who is he ?  What re-
commendation ?  And to what thing ?  In the introductory
part, the information charged the libel to have been written " of
and concerning the Pretender," and " of and concerning his
right to the crown of *Great-Britain ;*" and it was held, that
the *innuendoes* in the body of the libel, explaining the words
*chevalier,* &c. to mean the Pretender and his hereditary right
to the crown of *Great-Britain,* when connected with the aver-
ments in the introductory part, of its being written " of and

concerning the Pretender and his right to the crown of *Great-Britain,*" were a sufficient explanation to make good the charge.

Now, in the case before us, when it is averred, that the plaintiff filled a particular office, that he was removed from it, and that the libel was published of and concerning him, and of and concerning him in reference to that fact; and the jury have found these allegations to be true; is judgment to be arrested, on the ground, that there may have been others, for aught that appears on the declaration, to whom the charge may have applied? We know of no modern authority that will bear out such a decision.

It may be proper, very briefly, to advert to some, that have been relied on, by the defendant's counsel. The case of *Goldstein* v. *Foss* & al. 6 *Barn. & Cres.* 154. has been cited. The judgment in that case was arrested, on the ground that the introductory matter, stated in the declaration, was immaterial, not being connected with the libel; that the *innuendo* was not warranted by it; and that the words of the libel, unexplained by introductory matter, were not actionable. In giving his opinion in the case, *Bayley,* J. says: " If the libel, as stated, had been connected with the introductory matter, the declaration might have been good; for then there might have been sufficient to warrant the introduction of the *innuendo.*"

In *Wood* v. *Brown,* 6 *Taun.* 169. the declaration was adjudged insufficient, because the libel was not set out ;—it being stated that the defendant published a libel *purporting* that the plaintiff's beer was bad, &c.

And so again, in the case of *Stockley* v. *Clement,* 4 *Bing.* 162., the declaration did not contain even an *innuendo,* alleging that the charge in the publication applied to the plaintiff; and there was nothing in the charge, which threw the least imputation upon him, or which showed that he had any connexion with it.

In *Clement* v. *Fisher,* 7 *Barn. & Cres.* 459., the question arose upon the second count in the declaration. The libel was set out in that count; but there was no allegation that it was of and concerning the plaintiff; nor did it appear, on the face of it, to relate to him ; and there was no *innuendo* to connect it with the plaintiff. The count was holden to be bad. But

New-Haven,
July, 1837.

Mix
v.
Woodward.

Lord *Tenderden* there says, such an allegation would have been unnecessary, if there had been, in the libel set out, any thing which clearly applied to the plaintiff, *or any distinct innuendo so applying the libellous matter.*

The cases of *The Commonwealth* v. *Child*, 13 *Pick.* 201. and *Bullock* v. *Koon*, 9 *Cowen*, 30. merely recognise the general and well settled principle, that where words are not in themselves actionable, but become so, by extrinsic circumstances, these must be averred and proved.

A very slight examination of these, and the other authorities relied on by the defendant, will show, that they fall very far short of deciding the point now under discussion.

We have already adverted to the objection, that the declaration contains no averment, that the plaintiff either was, or was reputed to be, the writer in the *Register :* and we have remarked, that it is not necessary for the declaration to satisfy every description given in the libel.   This position is fully sustained, by the authorities.   Thus, where the libel was stated to have been published of a man in two trades ; it was held, that the allegation might be divided.   *Figgins* v. *Coggswell,* 3 *Mau. & Selw.* 369.   See also Lord *Churchill* v. *Hunt,* 2 *Barn. & Ald.* 685.   *Chambers* v. *Shackell* & al. 6 *Car. & Payne,* 475.   *May* v. *Brown,* 3 *Barn. & Cres.* 113.   *Rutherford* v. *Evans,* 4 *Car. & Payne,* 74.   *Teesdale* v. *Clement,* 1 *Chit. Rep.* 603.

Another objection taken to the declaration, is, that the *innuendoes,* in the several counts, are not warranted by the libel. In all the counts, the meaning is alleged to be *" that the plaintiff had packed a jury, and had been guilty of malpractice in packing a jury."*   Thus far, we think the correct meaning of the libel is given, as will be shown in a subsequent part of the case.   There are, indeed, other allegations ; and a further meaning is imputed to the defendant, in the several *innuendoes.*   Now, it is very clear, that an *innuendo* cannot extend the sense of the words beyond their true meaning, unless something is put upon the record for it to explain.   It is merely explanatory of the subject matter already expressed ; and it is explanatory of such matter only.   *Rex* v. *Horne,* and *Van Vechten* v. *Hopkins,* already cited.

Now, whether the *innuendoes* here do attempt to extend the meaning of the words, and are thus obnoxious to the objection

that has been raised, we do not think it very material to en-
quire : for the cases are abundant to prove, that although these
additional averments are not warranted, by the introductory
matter, yet if the counts can be sustained without these aver-
ments, they may be rejected as surplusage.   1 *Chitt. Plead.*
383.   2 *Chitt. Plead.* 256. *in notis.*   1 *Sw. Dig.* 644.   1
*Saund.* 243. n. 4.   *Roberts* v. *Camden*, 9 *East*, 93. 95.
Note *a* to *Chambers* v. *Shackell*, 6 *Car. & Payne*, 475.
(25 *Serg. & Lowb.* 499, 500.)   *Harvey* v. *French*, 2 *Moore
& Scott*, 591.

We are of opinion that they can be sustained, and that upon
the whole, the declaration is sufficient, after verdict ; and there-
fore, the motion in arrest of judgment must be overruled.

The motion for a new trial, as has been observed, brings be-
fore us for review, several interlocutory decisions, made by the
judge on the circuit.

1. It is objected, that the evidence offered to prove that the
plaintiff was the person intended in the libel, was improperly
admitted.   This objection extends to the testimony of *Hoad-
ley B. Ives*, and the articles B and C, and involves two en-
quiries :   First, whether *any evidence*, not growing out of the
libel itself, or the extrinsic circumstances brought upon the re-
cord, was admissible to show the identity of the plaintiff ?
And secondly, whether the evidence offered was relevant to
that object ?

And in regard to the first branch of the objection, many of
the remarks which have been made, and many of the author-
ities which have been cited going to show that the declaration
is sufficient, are strictly applicable.

It is indeed said, that to enable a plaintiff to maintain an ac-
tion for a libel, he must have suffered damage from *the publi-
cation itself*, irrespective of the intention of the writing : and
that in order to his suffering such damage, he must be clearly
indicated, either by the publication itself, or by the extrinsic
circumstances, with which it is connected.

Now, it is undoubtedly true, as has been already intimated,
that words may be, in themselves, so vague and uncertain, that
they cannot be intended to apply to any person ; and in such
case, no action can be maintained.   The case put at the bar
furnishes an illustration of the principle.   If the words pub-
lished were, *" there is one pettifogger in Connecticut,"* no

person, whatever might be his character, could appropriate the description, and maintain an action.

But the objection takes much higher ground; and assumes, as we think, the broad principle, that to render a writing libellous, it must be so explicit in its terms, and *so pointed* to the plaintiff, *or so connected* with extrinsic facts, as that every person reading the libel, or reading it it in connexion with a knowledge of the facts referred to, *must necessarily* understand it as applying to the plaintiff. If this be the correct rule; and if, as has been contended, in another part of the argument, the court is to judge of this matter; it would follow, that in cases of libel, every thing would be withdrawn from the consideration of the jury, but the naked fact of publication. But such we do not understand to be the rule. We suppose it to be well settled, that where the person is so ambiguously described, that a resort to extrinsic facts is necessary to ascertain his identity; there the libel and all attending circumstances, are to be submitted to the jury; and that the plaintiff is at liberty to prove the averment, *" that the libel was published of and concerning him,"* in the same manner, and by the same kind of evidence, as he might prove any other fact in the case.

In the case of *Chubb* v. *Westley,* 6 *Carr. & Payne,* 436., subsequent libels, referring to those for which the action was brought, and attacking the plaintiff, were admitted, not only as shewing *quo animo* the former libels were published, *but also as shewing that the defendant himself considered those libels as applying to the plaintiff.* See also *Roscoe on Evid. tit.* Case for Defamation. *Stark. Sland.* 94., 5, 6. 14 *Serg. & Rawle* 359. *Gidney* v. *Blake,* 11 *Johns. Rep.* 54. *Bornman* v. *Boyer,* 3 *Binn.* 515. *Thorn* v. *Blanchard,* 5 *Johns. Rep.* 508. *Rex* v. *Horne, Cowp.* 676.

Secondly, was the testimony offered relevant? Or did it conduce to prove the fact for which it was offered? And in regard to the evidence of *Hoadley B. Ives,* we think the question entirely free from doubt. This witness testifies to a conversation between the defendant and others, soon after the publication of the libel in question; and the charge here made was then repeated, and substantially in the same terms. The defendant expressed his gratification, at the removal of the

plaintiff from the office of a justice; and said, *" he is now in a situation where he will not pack another jury."*

The article marked B, stands on as high, and perhaps on higher ground. There, the attention of the defendant was particularly called to the publication of the libel. He was directly charged with publishing it, of and concerning the plaintiff, and satisfaction was demanded for the injury. So far from denying the charge, as he might, and should have done, if it was unfounded, he impliedly admits its truth, and sets the plaintiff at defiance.

If the article marked C, is more remote, and does not prove much on the point, still we are not prepared to say, that it does not contain some evidence for the jury to consider.

The deposition of *John C. Palmer* was objected to, in the court below; and the objection, although it has not been much insisted on here, may as well be disposed of, in this place. We think the deposition strictly admissible, as showing *quo animo* the publication was made.

It was further contended, on the trial, and has again been urged here, that as it appeared from the testimony introduced by the plaintiff, that there were other justices in *New-Haven* county, who were not re-appointed in *May,* 1834, and to whom the publication might have applied, as well as to himself, the whole was so vague, that the court should have told the jury there was no evidence to shew, that the plaintiff was the person meant; and to have directed a verdict for the defendant.

The objection is resolvable into the single enquiry, whether there was any testimony in the case for the jury to weigh; because, if there was, the judge had no power to withdraw the evidence from their consideration. We certainly are not prepared to say, that there was no evidence in the case.

2. It is said, that the court erred in not admitting the evidence offered by the defendant, under his notice. The testimony was received in mitigation of damages; and the only question now is, whether the facts set up in the notice, and offered to be proved, amounted to a justification of the charge contained in the libel.

In *Chalmers* v. *Shackell* & al., 6 *Carr. & Payne,* 475., the rule is laid down, that in order to a justification of the charge, the same evidence must be given, as would be necessa-

ry to convict the plaintiff, if he were on trial for the offence charged; and the jury must be satisfied, that the strict legal offence was committed.   The same rule, and almost in the same terms, was laid down, by the supreme court of the state of *New-York*, in the case of *Root* v. *King* & al., 7 *Cowen* 618., and again, by the supreme court of errors, in the same case on error.   4 *Wend.* 113.   And in the case of *Stow* v. *Converse*, in this court, 4 *Conn. Rep.* 17., it is said, that a party who would justify a charge, must do it specifically, and cannot prove a charge of the same general nature, but distinct as to the particular subject.

*New-Haven,*
*July,* 1837.

Mix
*v.*
Woodward.

It cannot, surely, be necessary to refer to the long list of authorities, which go to prove, that the specific charge must be justified; and that a man may not "*defame in one sense, and defend in another.*"

With this rule in view, let us look, for a moment, at the charge, and compare it with the facts set up by way of justification.

The charge is of "mal-practice in *packing* a jury."   Now, whether we consult the most approved lexicographers, or adopt the popular meaning of the term "*to pack,*" as applied to a jury, the charge clearly imports the improper and corrupt selection of a jury, sworn and empannelled for the trial of a cause.   "When (says *Blackstone,*) a sufficient number of persons are empannelled, they are then separately sworn well and truly to try the issue between the parties, and a true verdict to give, according to the evidence; *and hence they are denominated the jury, jurata.*"   3 *Bl. Com.* 365.   The purport of the charge, then, cannot be mistaken.   Now, what are the facts averred in the notice, and offered to be proved? Nothing can be more obvious than that they do not meet the charge contained in the libel.   They do not go to shew, that the plaintiff at all interfered in the selection of a jury empannelled and sworn.   At most, they prove that he conducted improperly in the selection of free-holders, to be placed in the jury-box.   And this can hardly be said to be a charge of the same general nature:   much less is it the specific charge complained of.

It has, however, been urged, that in *Connecticut,* a justice of the peace has no power to *pack a jury,* according to the ordinary, and strictly legal meaning of that term; and that the

only agency he can exercise in the matter, is precisely that set forth in the notice; and that the charge must be understood to have been made in reference to these well known facts. The answer which was given to this argument, at the bar, was entirely satisfactory. For it is true, that in cases of forcible entry and detainer, and also in cases of summary process to obtain possession of lands, &c., a justice of peace may *pack a jury,* within the legal and known signification of the term. And besides, when words having a well known meaning, are used without qualification, they must be taken to have been used in their ordinary and common acceptation. And it is no excuse, much less a justification, that they might have been used in some other sense.

3. It is insisted, that the jury ought to have been permitted to pass upon the truth of the *innuendoes,* and also to put a construction upon the libel.

It is indisputable, that an *innuendo* is not, ordinarily, the subject of proof. So are all the authorities.—And this follows from the very nature and office of an *innuendo;* it being merely explanatory of that which is already sufficiently expressed. It can do no more than explain; and if, in this case, the meaning of the words is extended, by the *innuendoes,* the objection is upon the record, and has already been considered.

It is true, that where the plaintiff sues, in a particular character, and in the *innuendo,* he explains the words spoken, as applying to him *in that character,* he is bound to prove, that they were *so* spoken. And so again, where the words are ambiguous, and admit of different applications; if the *innuendo* limit and confine them to a particular sense, the plaintiff is bound to prove, that they were used in that sense. The case of *Sellers* v. *Till,* 4 *Barn. & Cres.* 655., illustrates the former of these positions, and that of *Smith* v. *Carey,* 3 *Campb.* 460., the latter. In the first-mentioned case, the declaration stated, that the plaintiff was treasurer and collector of certain tolls;—and that the defendant spoke of and concerning the plaintiff, *as such treasurer and collector,* certain words, " thereby meaning that the plaintiff, *as such treasurer and collector,* had been guilty," &c. It was held, that he was bound to prove, that he was treasurer and collector, and that the words were applied to him, in the manner that he had himself pointed out.

New-Haven,
July, 1837.

Mix
v.
Woodward.

In *Carey* v. *Smith*, the words were, *"that he lived by swindling and robbery"*—*innuendo*—*"*meaning thereby that the plaintiff had been guilty of felony and robbery." The words might be understood to convey a charge either of *felony* or *fraud ;* and they appeared to have been used in the latter sense. It was held, that the plaintiff was bound to shew, that the words were used in the sense ascribed to them. And Lord *Ellenborough* there says, "the words were in themselves actionable; and if there had been no such *innuendo* as to their meaning, the plaintiff would certainly have been entitled to a verdict. See also *Goldstein* v. *Foss* & al. 6 *Barn. & Cres.* 154. *Thompson* v. *Bernard*, 1 *Campb.* 48. *Penfold* v. *Westcote*, 2 *New Rep.* 335.

But the court decided, that the words, if published of the plaintiff, did necessarily import that he had actually been guilty of mal-practice in packing a jury; and that the words were, on the face of them, libellous. And it is contended, that in this the court erred: that the words do not necessarily import this ; but only that the plaintiff had been deprived of his office on a charge of having packed a jury ; and that what was the defendant's meaning, was a question of fact for the jury to decide.

It is very difficult to see how the court could have avoided putting a construction on this publication. How could the question in regard to the justification be determined, without construing the libel ? And was the wrong construction put upon it ? And was there really any thing to be left to the jury ? In the case of *Roberts* & al. v. *Camden*, 9 *East*, 93., the words were, "he is under a charge of prosecution for perjury, and *G. A.* had the attorney-general's directions to prosecute him for perjury." The words were held to be actionable; and Lord *Ellenborough* says, "these words, fairly and naturally construed, appear to us to have been meant, and to be calculated to convey the imputation *of perjury actually committed,* by the person of whom they were spoken."

We think that the determination of the judge on the circuit, upon this point, was entirely correct.

4. On the trial below, several articles, reflecting upon the plaintiff, and on the face of them confessedly libellous, and published by the defendant, after the publication of the libel in question, but having no reference to it, were offered in evidence,

*New-Haven,*
*July, 1837.*

Mix
*v.*
Woodward.

for the purpose of proving malice.    The evidence was reject-
ed, as inadmissible for any purpose.

The articles marked F and G, were then offered, and on the
supposition that they were not, in themselves actionable, were
permitted to go to the jury for the purpose of showing the ma-
lice of the defendant.    We think that the ruling of the judge,
in the first instance, was correct ; and we are strongly inclined
to the opinion, that the articles before us should have been re-
jected, as falling within the principle already decided.

It is however unnecessary for us to say whether these articles
are, on the face of them, libellous ; for we are all of opinion,
that whether libellous or not, as they had no reference to the
libel on trial, they ought not to have been permitted to go to
the jury.

In regard to the admissibility of publications, or of words
spoken, subsequently to those for which the action is brought,
the authorities, both in *Great-Britain* and in the neighbour-
ing states, are far from being uniform.    Indeed, they cannot
be reconciled.    In the case of *Charlter* v. *Barrett, Peake's
Ca.* 22. Lord *Kenyon* admitted the evidence.    In *Mead* v.
*Daubigny, Idem,* 125. he rejected it ; and again, he received
it, in *Lee* v. *Huson, Idem,* 166.    In *Rustell* v. *Macquister,*
1 *Campb.* 49. in note, Lord *Ellenborough* admitted the evi-
dence ; and rejected it, in *Stuart* v. *Lovell,* 2 *Stark. Ca.* 93.
In *Finnerty* v. *Tipper,* 2 *Campb.* 72. *Mansfield,* C. J. re-
jected the testimony.

It can hardly be either necessary or useful to refer to the nu-
merous decisions, which have taken place, in the several states
upon this " *vexed question.*"    We believe the weight of au-
thorities, and especially the later ones, is in favour of rejecting
the evidence.    In giving the opinion of the court, in the case
of *Bodwell* v. *Swan* & ux. 3 *Pick.* 376. *Parker,* C. J. re-
marks : " According to *Mansfield,* C. J. a repetition of the
same words, or the same libel, may be proved, to show that
the first was not heedless, but malicious ; and we think, that
so far we may go ; but we cannot agree, that if a man sue an-
other for calling him a thief, he may prove, that at another
time afterwards, he called him a murderer."

It is not, indeed, easy for us to discover upon what principle
evidence of this character has ever been received.    Is it for the
purpose of proving malice ?    This is implied from the publica-

tion of the libel on trial.   The only object, then, can be to
heighten the degree of malice, and thus to enhance the dama-
ges ; and so damages may be twice given for the same publi-
cation.   But this consequence has been studiously repelled, by
every judge, by whom the testimony has been admitted ; and
the jury are uniformly told, that for subsequent publications or
words, they are not to give damages.

*New-Haven,*
*July, 1837.*

Mix
*v.*
Woodward.

   The point before us, has not, to our knowledge, ever been
settled, by this court; and amidst the conflict of authorities,
which has prevailed elsewhere, we feel ourselves at liberty to
determine the question upon principle.   And upon this, we
are decidedly of opinion, that neither any subsequent publica-
tion, nor subsequent words, not referring to the libel, or to the
slander on trial, can be admitted in evidence.   And on this
ground, we make the rule, in the present case, absolute.

   In this opinion the other Judges concurred.

                              New trial to be granted.