PROVISIONAL GOVERNMENT OF THE HAWAIIAN
ISLANDS *vs.* WALTER G. SMITH.

QUESTION RESERVED.

HEARING, SEPTEMBER 20, 1893.    DECISION, OCTOBER 28, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A publication may be libellous, although it refers to a person indirectly,
as where it is allegorical.

A publication may be libellous, although it does not impute a criminal
offense.

It is for the Court to say whether a publication is capable of the mean-
ing attached to it by the innuendoes, and for the jury to say wheth-
er that is the true meaning.

Where words are libellous only when read in the light of extrinsic
facts, such facts must be averred, and the words must be connected
with them by *colloquia*.

An innuendo can explain words, but cannot add to them a sense which
they do not ordinarily bear.

An indictment for words capable of a libellous meaning may, upon
demurrer, be amended by the insertion of averments and *colloquia*
to show that the meaning is libellous.

OPINION OF THE COURT, BY FREAR, J.

Question reserved by Judge Whiting at the last August
Term of the Circuit Court of the First Circuit as to the
sufficiency of the indictment, upon general demurrer.

The defendant is charged with having published in a news-
paper a libellous article of and concerning one Claus Spreck-
els. The indictment contains introductory averments and
*colloquia* to show that Claus Spreckels, who is not named in

the article, is the person referred to therein, and sets forth the article in full, with innuendoes. The passages, with the innuendoes, which are especially relied upon as showing that the article is libellous, are as follows, in the first count:

"His (meaning said Claus Spreckels') next move was to attack his (meaning said Claus Spreckels') debtors who were of the dominant party through the courts, and by a quiet word here and a useful thaler (meaning dollar) there inflame the Royalist faction (meaning the supporters of said Liliuokalani) and induce it in spite of its great respect for its own neck to commit some overt act, (meaning allegorically that said Claus Spreckels then and there had instigated others to commit an offense, to wit, the offense of speaking seditious words by publishing verbally to the supporters of said Liliuokalani with a seditious intent, words tending to cause them to commit an overt act of a seditious nature).

*          *          *          *          *          *

It appeared that the inculpated millionaire (meaning said Claus Spreckels) had carried his sedition on his sleeve. He (meaning said Claus Spreckels) had run at the mouth about his plans, and had entrusted grave secrets to men who could not retain them. It was easy, therefore, to prove that he (meaning said Claus Spreckels) was a conspirator against the peace and dignity of the Provisional Government of Germany (meaning allegorically Hawaii; and meaning that said Claus Spreckels was guilty of an offense, to wit, seditious conspiracy, by conspiring with others with a seditious intent to excite the supporters of said Liliuokalani to further a seditious intention, to wit, an intention of acting against the peace of the Provisional Government of the Hawaiian Islands)."

The second count differs from the first only in the innuendoes which follow the phrases, "overt act" and "Provisional Government of Germany," being in the second count as follows:

"(Allegorically meaning thereby and by the words below set forth that said Claus Spreckels then and there had

instigated others to commit an offense, to wit, treason, by inciting others to commit an overt act of war against the Provisional Government of Hawaii, said persons so instigated then owing allegiance to the Provisional Government of the Hawaiian Islands, and that said Claus Spreckels was then and there an accessory before the fact to such overt act of treason).

\* \* \* \* \* \*

(Meaning allegorically Hawaii, and meaning in conjunction with the words above set out that said Claus Spreckels was guilty of an offense, to wit, conspiracy to commit treason by treasonably conspiring with others to induce certain persons to commit overt acts of insurrection against the Provisional Government of the Hawaiian Islands)."

The article purports to relate to the doings and experiences of a German in Germany. It is contended for the prosecution that the article is allegorical and that it was intended and was understood to relate to the doings and experiences of Claus Spreckels in the Hawaiian Islands.

The defendant contends that because the article is allegorical it cannot be libellous, for by the statute "a libel is a publication \* \* \* which *directly tends* to injure the fame, reputation or good name of another," etc. It seems to us that the word "directly'" in the statute refers to the effect and not to the mode or form of the publication. A publication may indirectly refer to a person, but directly tend to injure his good name. This distinction is well illustrated by another statute which defines a conspiracy as a combination "to do what plainly and *directly tends* to excite or occasion offense, or what is obviously and *directly* wrongfully injurious to another: for instance— \* \* \* To prevent another, by *indirect* and sinister means, from exercising his trade."

Defendant further contends that to be libellous the publication must impute to the complainant a criminal offense. The statute defines as libellous any printed publication which "directly tends to injure the fame, reputation or good name

of another person, and to bring him into disgrace, abhorrence, odium, hatred, contempt or ridicule, or to cause him to be excluded from society." This statute clearly does not confine libels to publications which impute a criminal offense. And it was so held by Mr. Justice McCully in *Rex vs. Gibson*, 6 Haw., 310. See also *State vs. Spear*, 13 R. 1., 324.

It is not for us to say whether the publication in question directly tends to injure the reputation of Claus Spreckels and to bring him into disgrace, odium, etc., nor is it for us to say just what the publication was intended or understood to mean. We have only to say whether, as read in the light of properly averred extrinsic facts necessary to explain its meaning, it is capable of a libellous meaning, and whether such extrinsic facts are properly averred. It is for the jury to pass upon the actual meaning of the words, and to say whether they are in fact libellous unless the Court must find by an inspection of the indictment that the publication in the light of properly averred extrinsic facts is incapable of a libellous meaning. *Blagg vs. Sturt*, 10 Q. B., 899.

We think that the words in question are capable of a libellous meaning. They may, in view of possible extrinsic facts known to the reader, be taken to impute to Claus Spreckels the offense of instigating, or conspiring with, others to commit a seditious offense, as set forth in the innuendoes in the first count, or the offense of instigating, or conspiring with, others to commit the offense of treason, as set forth in the innuendoes in the second count, or they may be taken to impute the doing of acts, hostile to the existing Government, which are not covered by any penal statute. It is for the jury to say whether the true meaning of the words has been attached to them in the innuendoes.

Being of the opinion that the publication is susceptible of a libellous meaning in the light of possible extrinsic facts, it remains for us to say whether such facts are properly averred. Where words are used in their ordinary sense, no extrinsic facts need be averred to show their meaning, but where, as in the present case, they are alleged to be used,

allegorically, in a sense which could not be understood but for the knowledge of certain extrinsic facts, it is necessary to aver those facts in order to show on the face of the indictment the meaning of the words. If the words standing alone are ambiguous, there must be in general three things to show their true meaning, (1) averments of extrinsic facts, which explain the meaning of the words, (2) *colloquia*, connecting the words with those facts, and (3) innuendoes, pointing out the meaning of the words when read in the light of those facts. The publication in question is ambiguous. Read in their literal sense, the words do not refer to Claus Spreckels, nor are they of a libellous nature. Certain extrinsic facts are averred to show that the words refer to Claus Spreckels, and there is a *colloquium* that the words were published of and concerning Claus Spreckels, but there is no colloquium that they were published of and concerning the extrinsic facts set forth in the averments, nor are there any averments of extrinsic facts, or *colloquia*, to show that the words are used in a libellous sense. Innuendoes alone are not sufficient; they may explain what already appears upon the record as a ground for the explanation, but they cannot add to, or alter the sense of the expressions as usually understood. The publication in question is allegorical or ambiguous as to other matters, for instance, as to the country and the political parties or situation in the country of which, as well as to the person of whom, it is written. There should be averments and *colloquia* to explain the allegorical language. If the indictment contained proper averments and *colloquia* to show that the meaning set forth in the innuendoes might reasonably be put upon the words of the publication, it would be for the jury to say whether the averments are established by the evidence, whether the *colloquia* are true, and whether the innuendoes express the real meaning of the words. See *Rex vs. Horne*, Cowp. 672; *Van Vechten vs. Hopkins*, 5 Johns. 211; *Mix vs. Woodward*, 12 Conn. 262; *Emery vs. Prescott*, 54 Me. 389; *Hoare vs. Silverlock*, 12 Ad. & E. N. S. 624.

Counsel for the prosecution at the hearing before this Court moved for leave to amend the indictment by inserting certain *colloquia* which would at least to some extent supply the deficiencies above referred to, but this Court cannot properly grant such motion. We think that the demurrer should be sustained, but that, under the provisions of Section 33 of the Criminal Practice Act, the Circuit Court may allow an amendment to the indictment, by the insertion of proper averments and *colloquia*.

*F. M. Hatch*, for the prosecution.

*A. S. Hartwell*, for defendant.